No. 38,931

H. A. DORSSOM, *Appellee,* v. THE KANSAS POWER AND LIGHT COMPANY, a Corporation, and A. W. MICKADEIT, *Appellants.*

(257 P. 2d 151)

Opinion filed May 9, 1953.

Robert E. Russell, of Topeka, argued the cause, and Clayton E. Kline, M. F. Cosgrove and Balfour S. Jeffrey, all of Topeka, and Maurice P. O'Keefe and Karl W. Root, both of Atchison, were with him on the briefs for appellant, The Kansas Power and Light Company.

J. W. Lowry, of Atchison, argued the cause, and Steadman Ball and Edmund L. Page, both of Atchison, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is an action to recover for personal injuries and property damage sustained in an automobile collision.

On Sunday morning, December 18, 1949, employees of defendant, The Kansas Power and Light Company (hereinafter referred to as the company), were engaged in setting an electric high-line pole immediately to the south of U. S. Highway No. 73 near Lancaster, in Atchison county. The morning was foggy and visibility was limited. At the place in question the highway runs east and west. It consisted of an old eighteen-foot concrete slab which had been extended by a black-top covering so that the over-all width was approximately twenty-two feet. Each of the shoulders was from two to three feet wide. The company's truck was backed into the ditch on the south side and was headed northeast. The left front wheel and that part of the truck extended onto the highway several feet, thus partially blocking the south traffic lane. At about 10:30 that morning plaintiff was approaching from the east and defendant Mickadeit from the west. Their cars collided as, or immediately after, Mickadeit turned out to his left to get by the truck. Both cars were damaged and both plaintiff and Mickadeit sustained injuries. The truck was not moving and was untouched.

Plaintiff brought this action against the company and Mickadeit, and sought to recover in the amount of $1,460 for his personal injuries and property damage. The theory of his amended petition is that while he, in the exercise of due care, was proceeding in a westerly direction in his own traffic lane, the car being driven by Mickadeit, who was approaching from the west, was negligently and recklessly swung to the left or north side of the highway in an attempt to get around the company's truck which was partially blocking the south traffic lane, and in so doing collided with plaintiff's car.

The allegations of negligence on the part of Michadeit are that he was driving at an unreasonable speed under the conditions then existing; that he was driving on the north or left side of the center of the highway; that he was not exercising reasonable caution commensurate with the apparent danger; that he was not watching the highway and the use thereof; that he was driving without regard to the traffic or use of the highway; that he failed to use such care as an ordinarily reasonable and prudent person would have used under the circumstances; and that he did not decrease his speed or stop so as to avoid an accident when a special hazard existed which could or should have been seen by him had he been paying attention.

The allegations of negligence on the part of the company are that at the time and place Mickadeit was driving in the manner

heretofore related the company was negligent in that its employees left the truck standing upon the paved or main traveled portion and crosswise of the highway, without leaving free passage to other vehicles and without a clear view of the truck for a distance of 200 feet; that the truck, thus obstructing the highway, was left without lights at a time when there was not sufficient light to render objects clearly discernible at a distance of 500 feet; that they failed to place warning signs of any kind on the highway, and that in undertaking to direct traffic around the truck so parked they did so in such manner as to create an additional hazard to plaintiff and other users of the highway. Then follow allegations concerning plaintiffs personal injuries and property damage sustained by him as the proximate result of the substantially concurrent acts of negligence on the part of both defendants.

The separate answer of the company alleges that its employees were lawfully engaged in placing a new high-voltage transmission line pole immediately adjoining the highway; that the only practical method of performing such work necessitated the backing up and parking of the truck in the ditch to the south of the highway so that the hoist on the rear of the truck could be used in raising and placing the pole, and that the truck, as so parked, although extending a short distance onto the south portion of the highway, left approximately twenty-three feet of black-top paved highway to the north of the truck for use of other vehicles. It further alleges that while the driver of the truck was sitting in the driver's seat and looking out of the rear thereof, in operating the hoist which had been fastened to the transmission pole, the car driven by Mickadeit approached from the west and passed to the east of the truck a distance of twenty-five to forty feet when a collision occurred between the cars driven by Mickadeit and plaintiff. Then follow allegations denying fault or negligence whatsoever on the part of the company or its employees, and a further allegation that the company does not know whether the collision was due to the negligence of plaintiff or defendant Mickadeit, or both, but that the sole and proximate cause thereof was the negligence of either plaintiff or Mickadeit, or both, in that they failed to operate their vehicles so as to avoid the collision.

Plaintiff's reply to the separate answer of the company is in the form of a denial.

Defendant Mickadeit filed a second amended separate answer and cross-petition. The answer, after admitting the collision at the

time and place in question, denies plaintiff's allegations of negligence as to him; alleges that after he had passed the parked truck and had returned to the right or south traffic lane his car was hit by the car being driven by plaintiff in a reckless and negligent manner in that plaintiff was driving at an excessive rate of speed, considering the condition of the weather, visibility and traffic; that plaintiff's car was being driven in a westerly direction in the center of or on the south side of the highway, and that plaintiff failed and neglected to keep a proper lookout and failed to have his automobile under proper control so that he could stop within the range of his vision.

For further answer Mickadeit neither admits nor denies plaintiff's allegations of negligence on the part of his codefendant, the company, but specifically denies that he himself was negligent.

In his cross-petition Mickadeit alleges that his personal injuries and property damage were the direct and proximate result of the specific acts of negligence on the part of plaintiff referred to in his answer, and the prayer is for recovery from plaintiff in the amount of $6,190.

Plaintiff's reply and answer to Mickadeit's answer and cross-petition are in the form of denials.

We therefore have this situation: The automobiles of plaintiff and Mickadeit collided. Plaintiff sued both the company and Mickadeit, alleging that his personal injuries and property damage were the proximate result of substantially concurrent acts of negligence on the part of both defendants. The company's answer denied negligence on its part and alleged that the collision was the result of negligence on the part of either plaintiff or Mickadeit, or both. Mickadeit's answer neither admitted nor denied negligence on the part of the company; denied negligence on his part, and charged plaintiff with contributory negligence. His cross-petition sought to recover from plaintiff on the theory plaintiff's negligence was the direct and proximate cause of the collision.

Upon the issues thus joined the parties proceeded to trial by a jury.

Plaintiff testified that as he drove his 1941 Chrysler automobile down the highway in a westerly direction on the foggy morning in question he saw the truck parked on the south side of the highway from a distance of about 150 feet, visibility being limited to approximately that distance. He did not observe any flares or warning signs on or along the highway, and he was driving about thirty to

thirty-five miles per hour. Due to the foggy condition his parking lights were on. The truck was unlighted. The highway was not slippery and his car, including the brakes, was in good mechanical condition. As he approached the truck, which he thought was moving, he did not slacken his speed. He was on his own or north side of the highway. Just as he got close to the truck the car driven by Mickadeit, which he had not seen before, swung around to the north or left of the truck and crashed into the left front part of his car. The point of impact was east of the truck and, according to him, was in the center of the highway or in the north traffic lane. His version was that the whole thing happened in a "flash" and that he did not see Mickadeit's car until the instant of the collision. He estimated that the left front part of the truck extended onto the surfaced part of the highway for a distance of two or three feet.

Damage to his car was placed at $450, but we are not here concerned with his personal injuries.

A witness, who had driven up to the scene of the collision from the east very shortly after its occurrence, testified that he had seen no warning signs along the highway; that visibility was poor because of fog, and he placed the truck as extending about four feet onto the highway.

A second witness, who had also approached from the east not long after the collision, testified as to the fog; that he had seen no warning signs along the highway, and that after the collision employees of the company were flagging traffic.

Another witness for plaintiff, who arrived at the scene of the collision, testified that plaintiff's car was in the ditch on the north side of the highway, facing southeast, and that Mickadeit's car was south of the highway. He estimated that the parked truck extended onto the highway about three feet, and from dirt on the highway he placed the point of impact "within an area about the center of the highway on both sides of the line." He had come from the east and had not observed any warning signs.

Both the company and Mickadeit demurred to plaintiff's evidence. Both demurrers were overruled.

An employee of defendant company testified that within a few minutes after he and fellow employees first commenced work that morning he had placed flares and warning signs at points 250 and 500 feet west of where they were working. None had been placed to the east. Another employee, a witness to the collision, testified that he saw Mickadeit coming down the highway from the west;

that he flagged him down; that Mickadeit came almost to a full stop, went around the truck and had returned to his own south lane as plaintiff's car approached from the east. He described plaintiff's speed as "pretty rapid" and that plaintiff either skidded or swerved into Mickadeit's car in the south traffic lane. He placed the point of impact fifty or more feet east of the truck.

Two Kansas Highway Patrolmen, who arrived at the scene about an hour after the collision, testified that at that time there were flares and signs 250 and 500 feet east of the scene; that plaintiff's car was in the north ditch and Mickadeit's in the south ditch, both being east of the truck; that the point of impact appeared to be about fifty feet east of the truck and south of the center line of the highway, and that the left front end of the truck extended onto the highway to a point about five feet south of the center line.

The substance of defendant Mickadeit's testimony was that as he came down the highway from the west he saw the truck for a distance of 500 or 600 feet; that he was flagged down and slowed his speed; that it was necessary to use the north or left traffic lane in passing around the truck; that as he was going around it he observed the plaintiff's car approaching from the east about 300 or 400 feet away, and that immediately after he had pulled at least the front of his car back to the south lane plaintiff's car veered over to the south and struck his car, the point of impact being about six inches south of the center line. Testimony concerning his personal injuries and damage to his car need not be detailed.

The jury found for plaintiff on Mickadeit's cross-petition and returned a verdict in favor of plaintiff against only the company in the amount of $450 for damage to his automobile.

The company's motions for judgment notwithstanding the verdict, and for a new trial, being overruled, it has appealed.

Mickadeit appealed from the order overruling his motion for a new trial, but, as he has filed nothing in this court in the way of an abstract or brief, his appeal must be considered as abandoned and it is so ordered.

The company alleges error in the overruling of its motion for judgment notwithstanding the verdict because, as is claimed, the evidence failed to establish negligence on its part and did establish contributory negligence of plaintiff. It is further contended the court erred in overruling the company's motion for new trial because of erroneous instructions given, because the verdict and judg-

ment are contrary to the evidence and law, and because of error in overruling its demurrer to plaintiff's evidence.

We are unable to find substantial merit in any of those contentions.

First, with reference to the demurrer to the evidence. The facts are simple. Plaintiff testified that he was proceeding in a careful manner in his own traffic lane and that he did not see Mickadeit's car until the instant of the collision. True, he had seen the truck for a distance of about 150 feet, but, as his own traffic lane was clear, and as he thought the truck was moving forward, there really was nothing to warn him of any immediate hazard ahead. The situation was unlike that present in *DeGraw v. Kansas City & Leavenworth Transportation Co.*, 170 Kan. 713, 228 P. 2d 527, relied on by the company, in which the bus driver saw the truck, obviously out of control, for a distance of some 600 or 700 feet. Under the familiar rule to be followed in testing the sufficiency of evidence as against a demurrer, laid down in *Tuggle v. Cathers,* 174 Kan. 122, 127, 254 P. 2d 807, we think it cannot be said the facts were such that reasonable minds might not reach different conclusions thereon as to just who was to blame for the collision. It cannot be said that plaintiff's evidence convicted him of contributory negligence so as to bar his recovery as a matter of law, or that it utterly failed to show negligence on the part of the company. Those were proper questions for the jury and the demurrer to the evidence was properly overruled.

Objection was made to instruction No. 13 given by the court. In substance, it told the jury that a vehicle in the condition and location of the truck in question was required to exhibit lights, both front and rear, visible for a distance of 500 feet, as provided by G. S. 1949, 8-581 and 8-586. It is contended the mentioned provisions have no application here because it was daytime, citing *Rohrer v. Olson,* 172 Kan. 674, 242 P. 2d 825, in which it was said that § 81 (8-581), "among other things, refers to nighttime" (p. 678). Counsel misconstrue the quoted statement. The section does refer to nighttime, but it also refers to other times when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of 500 feet ahead. In view of the evidence as to the foggy condition and limited visibility on the morning in question, the instruction was not improper even though, from the evidence, it may be doubted that the presence of burning lights on the truck would have affected the result.

Complaint also is made of instruction No. 16. In this the jury was told there was some evidence to the effect the company increased its warning devices subsequent to the collision, and was instructed that if it should find such to be true the fact could be considered as a circumstance against the company indicating a lack of due care on its part but not against the defendant Mickadeit. It is claimed the instruction in effect told the jury that the company was negligent. We think counsel place undue emphasis on the import and meaning of the language used. There was evidence of additional warning devices being employed after the collision. Such evidence was admissible and therefore the instruction was not improper. See Hatcher's Kansas Digest, Revised Edition (1952), Negligence, § 66.

There remains, then, the general contention that the verdict and judgment are contrary to the evidence and law, and therefore the company was entitled to judgment notwithstanding the verdict, and that its motion for a new trial was erroneously overruled. What has been said with reference to the ruling on the demurrer to plaintiff's evidence might well apply here. This was essentially a fact case, and, while what is said is in no way to be interpreted as binding on any of the parties in litigation pending between these co-defendants growing out of this same collision, as we read the record before us the jury might very well have found plaintiff to have been responsible for the collision. No special findings were returned and so we have no way of knowing precisely on what the jury based its verdict. It may be that the jury concluded Mickadeit was negligently flagged around the parked truck at a time when a car was approaching from the east. It was within its province, however, under the evidence, to find as it did. We find no reversible error in the record and the judgment is therefore affirmed.