THE STATE OF KANSAS v. GEORGE W. DULL.

No. 13,396.  (74 Pac. 235.)

SYLLABUS BY THE COURT.

1. HOMICIDE—*Proof of Motive Not Indispensable.* In contem- ·
plation of law every sane man is presumed to intend the natural
and reasonable consequences of his own act. Hence, on the trial
of one charged with murder, if it be proved beyond a reasonable
doubt, to the satisfaction of the jury, that defendant killed the de-
ceased, proof of the motive which actuated the defendant thereto,
while always proper, is not indispensable.

2. ——— *Malice Inferred from Deadly Weapon.* When on
the trial of one charged with murder the accused denies all
knowledge of, or participation in, the act of killing, it is proper for
the court to instruct the jury that, if it be found from the evi-
dence beyond a reasonable doubt that defendant killed deceased
with a deadly weapon, malice in law may be inferred from the
fact that defendant used a deadly weapon.

Appeal from Rawlins district court; JOHN R. HAM-
ILTON, judge. Opinion filed November 7, 1903. Af-
firmed.

*C. C. Coleman,* attorney-general, *J. H. Briney, Fred.
Robertson,* and *Tully Scott,* for The State.

*John E. Hessin,* for appellant.

The opinion of the court was delivered by

POLLOCK, J. : About eleven o'clock on the morning
of April 18, 1902, in the little town of Herndon, Raw- .
lins county, Doctor Rowland was twice shot with a

38-caliber revolver, one bullet passing through his head and the other through his heart, killing him almost instantly. The killing was done in a room called the flour-room, attached to and forming a part of the general-merchandise store building of defendant. The defendant and deceased had resided in this town for many years. Both were married. They and their families, in so far as shown by the evidence, had lived in intimate and friendly relations. On the morning of the tragedy Doctor Rowland appeared at the store, spoke to defendant, saying: "Good morning, George. Where is Jesse [a clerk]? I want to speak to you." At the time defendant was sitting upon a lounge or settee in the storeroom, near the front door, wearing neither coat nor vest. The two walked a few feet into the flour-room, and stood near the front door leading from the street into that room. People passing observed them so standing and talking in an apparently friendly but interested manner. The evidence further shows that within a few seconds after being last observed so standing talking two shots were fired. The deceased was found lying where he had stood talking. There were powder marks upon his face, hand, and collar. Hence, it is evident the shots were fired at close range. It also appears that the shots were fired from the direction in which defendant was last seen standing, if deceased remained standing in the same position he had occupied. When first seen after the shooting defendant was sitting at his desk in the rear of the store at work upon his accounts, seemingly unperturbed. When by his clerk apprised of the killing he went at once to the deceased, prepared a pillow for his head, and in other ways assisted in ministering to his wants. While the testimony shows there was conversation be-

tween defendant and deceased on the morning of the tragedy in relation to some chattel-mortgage property, yet the record tends to show the visit made by deceased to the defendant was made with the knowledge of the wife of deceased, who, after the tragedy, sent for defendant to come to her bedside, where she lay sick and prostrated, and with great solicitation inquired whether the weather and the crop prospects were all they had talked about just prior to the tragedy, to which defendant responded "yes."

Upon the firing of the shots the flour-room was filled with smoke. One witness, passing, claims to have seen the legs of some one retreating through a wareroom in the rear of the flour-room just after the shooting occurred. There was a passageway back through this wareroom by which defendant could have gone after the shooting to his desk where seen just after the tragedy. A door in the rear of this wareroom which fastened from the inside was found unfastened and slightly ajar after the killing. The shots were fired from a 38-caliber weapon. Defendant owned a 38-caliber revolver. He was in the habit of carrying it to and from his store in the morning and evening, as he carried cash in some amounts from the store to his home. This revolver was afterward secured from the defendant, and when secured all the chambers were found loaded, two of which bore evidence of having been recently fired. This condition of the weapon was accounted for by evidence of the defendant and his wife that he had fired two shots at rats at his home.

No person other than defendant, deceased and the clerk in the store was seen around the store near the time of the tragedy. No one was seen leaving the building. It was not shown that deceased had any

enemy who had ever threatened his life or would be inclined to compass his death.

Defendant was arrested, charged with the crime of murder in the first degree, tried, and convicted of murder in the second degree, and appeals to this court.

The principal points in the evidence are presented in the briefs of counsel. This evidence, on the one hand, discloses almost an entire want of motive on the part of defendant to design or accomplish the death of deceased. On the other hand, there is in the evidence an entire absence of any plausible theory by which the deceased could have come to his death save at the hands of defendant. A case more barren of testimony upon the two features mentioned can scarcely be conceived, and, fortunately for those whose duty it is to assist in the enforcement of the law, seldom occurs.

The principal objection urged against the judgment of conviction is an utter want of evidence in its support. The evidence is circumstantial, the cause of the homicide shrouded in mystery. No motive on the part of the defendant to commit the deed is shown, yet, upon all the facts and circumstances in the case that go to make up the evidence found in the record, under the law as given by the court, the jury, with the witnesses for and against the accused face to face, assumed the responsibility of declaring the guilt of of the accused. This declaration of guilt has been upheld by the trial court, better able to judge of the manner, demeanor and credibility of the witnesses than is this court. Hence, it is now too late again to draw into controversy the question of the guilt or innocence of the accused, unless it may be said that there is an entire absence of testimony upon some essential

element of the crime vital to a conviction, or the trial
court has, as shown by the record, misjudged the law
to the prejudice of the accused.

No defense is interposed save that the deed was not
done by the defendant.   When the evidence found in
the record is fully considered in all its bearings;
when it is remembered that immediately prior to the
tragedy deceased and defendant were seen together,
standing in such relative positions that had the shots
been fired by defendant they would probably have
struck the deceased where the wounds resulting in
death were made; that the balls which caused the
death were fired from a weapon of the same caliber as
that found in the possession of the accused thereafter,
two chambers of which weapon had been recently dis-
charged; the utter improbability, not to say impossi-
bility, of the wounds' having been inflicted either by
the hand of the deceased or that of a third person;
the fact that the accused admits having heard the
shots fired in such close proximity to him without con-
cern or investigation, when the firing did attract the
immediate attention of others in the vicinity; the
further fact that the interview between deceased and
defendant was sought by deceased and intended to
be of a private nature; the route taken by the accused
from the place of his interview with deceased to the
place where he was first seen after the tragedy was
committed; the improbability of the testimony of ac-
cused that when the interview closed he left deceased
standing where he was immediately thereafter found
dying, and that he had no knowledge of the commis-
sion of the tragedy—when these facts are considered
with all the other circumstances in the case, as shown
by the record, the mind is of necessity almost irre-
sistibly compelled to the conclusion that defendant

must have committed the deed, although what motive, if any, actuated him thereto lies hidden in his breast, is not known, and may never be discovered until the last great day.

Conceding then, as we must, sufficient evidence found in the record to support the verdict of guilt, did the trial court err in matter of law to the prejudice of the defendant? Upon the question of motive the charge to the jury reads:

"The presence or absence of a motive for the alleged commission of an alleged crime is always an important ingredient for the consideration of the jury in determining the guilt or the innocence of the person charged, yet when the accused is shown beyond a reasonable doubt, even if only by circumstantial evidence, to be the perpetrator of the alleged crime, it is not necessary that there be proof of motive; there is no occasion for explaining the reason of his acts. Every man of sane mind is presumed to intend the reasonable and natural consequences of his own acts."

We think this instruction correctly states the law. Complaint is made of the manner of indorsing names on the information and its authentication by the prosecuting attorney. In this there was no error.

The only question of merit arising upon the law of the case is found in the charge of the court to the jury. Instruction 8 reads:

"When the killing is done with a deadly weapon or a weapon calculated to produce death, malice may be legitimately inferred in the absence of proof that the act was done in necessary self-defense or upon sufficient provocation or cause, and the presumption in such case will be that the act was voluntarily committed with malice aforethought."

Was the giving of this instruction error? Mr. Bishop,

in his work on Criminal Law, volume 2, section 680, says :

"As a general doctrine, subject, we shall see, to some qualifications, the malice of murder is conclusively inferred from the unlawful use of a deadly weapon, resulting in death."

In the case of *Commonwealth v. York*, 9 ·Metc. 93, 94, 43 Am. Dec. 373, it was held :

"The rule of law is, when the fact of killing is proved to have been committed by the accused, 'and nothing further is shown, the presumption of law is that it is malicious, and an act of murder. · It follows, therefore, that in such cases the proof of matter of excuse or extenuation lies on the accused ; and this may appear, either from evidence adduced by the prosecution, or evidence offered by the defendant."

In the case of *The State v. Earnest*, 56 Kan. 31, 42 Pac. 359, this court held :

"On the trial of a person charged with murder, the jury ought not to be instructed that the killing with a deadly weapon being admitted, the presumption therefore is that such killing was with malice, and that this presumption stands until it is rebutted by evidence.   It would be better to instruct them that malice may be inferred from the fact of killing with a deadly weapon, and that they should consider this circumstance in connection with all the other evidence in the case for the purpose of determining ·whether the act was malicious or not."

From the whole charge the jury are advised that if the one disputed fact, the act of killing, be first found against the accused beyond a reasonable doubt, the proof of motive for the commission of the deed may be dispensed with, and the essential ingredient in the crime of murder, malice, may be inferred from the use of a deadly weapon as the instrument employed to ac-

complish the deed. This we think proper, and the claim of error is disallowed.

It is further urged that, as there were no mitigating or extenuating circumstances shown or attempted to be shown in the killing, the verdict of murder in the second degree found no support in the testimony, and the jury should have been instructed to convict the defendant of murder in the first degree, or acquit, as they might find the fact of killing for or against the accused. There is, however, slight evidence found in the record which gives warrant to a charge of murder in the second degree and sustains the judgment. Aside from this, however, the evidence is circumstantial, and the jury may have failed to find from all the facts and circumstances in the case the deliberation and premeditation essential to uphold a verdict in the higher degree. In the case of *The State v. Moore,* ante, page 620, 73 Pac. 905, this court held:

"If, upon the trial of a defendant informed against for murder in the first degree, circumstantial evidence relied on for conviction be susceptible of interpretation in such manner as to exclude deliberation and premeditation, an instruction upon the law of murder in the second degree should be given."

Singular, mysterious and inscrutable as was the killing of the deceased by the defendant, as found by the jury in this case, yet, the jury upon sufficient evidence having found the act of killing to have been done by the defendant, and no justification therefor having been shown, and no error of law appearing in the record, the conviction must stand.

All the Justices concurring.