No. 27,274.

HENRY F. KERSTING, *Appellee*, v. C. S. REESE, *Appellant*.

SYLLABUS BY THE COURT.

1. MOTOR VEHICLES—*Automobile Collision—Negligence—Evidence.* In a collision of motor cars at an intersection of highways outside the limits of a city, where the jury found it occurred through the negligence of the defendant, and that the plaintiff was free from contributory negligence, the findings are held to be sustained by sufficient evidence.

2. SAME—*Value of Used Car—Competency of Witness.* Facts stated pertaining to the experience, purchases and handling of used automobiles by a witness are deemed to warrant the admission of his testimony as to the value of a used car.

3. EVIDENCE—*Expert Testimony of Physician—Necessity of Hypothetical Question—Nonprejudicial Error.* Testimony given by a physician which should have been based on a hypothetical question, but which was not put in that way, is held not to be prejudicial error.

4. HIGHWAYS—*Law of Road—Right of Way at Intersection on Paved Road.* In the absence of a legislative provision giving motor vehicles moving upon a paved road a preference or right of way at an intersection as against such a vehicle moving upon an unpaved intersecting road, no preference on that ground can be claimed.

---

Appeal and Error, 4 C. J. pp. 858 n. 3, 997 n. 85. Evidence, 22 C. J. pp. 695 n. 36, 708 n. 26. Highways, 29 C. J. p. 653 n. 57 new. Motor Vehicles, 28 Cyc. pp. 47 n. 20, 49 n. 46; L. R. A. 1916A, 745; 2 R. C. L. 1194; 21 A. L. R. 974; 37 A. L. R. 493.

Appeal from Sedgwick district court, division No. 4; ISAAC N. WILLIAMS, judge. Opinion filed April 9, 1927. Affirmed.

*Robert C. Foulston, W. E. Holmes, D. W. Eaton, George Siefkin, Sidney L. Foulston* and *C. I. Winsor,* all of Wichita, for the appellant.

*Z. Wetmore, Fred Hinkle, George Ashford, C. H. Brooks, Willard Brooks* and *Howard T. Fleeson,* all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Henry F. Kersting sued C. S. Reese to recover damages sustained in a collision of their automobiles at the intersection of two country highways. The plaintiff recovered and the defendant appeals.

The defendant was driving east on Central avenue, a paved and much traveled road which extended from Wichita to Augusta. Plaintiff was traveling north over another road which was improved and sanded up to the point where the collision occurred. There was testimony that the plaintiff approached the crossing at a speed of twelve miles an hour, that he looked toward the west from which the defendant was coming, when he was within sixty feet of the paved road, and which appeared to him to be clear of traffic except a Ford roadster which was about 150 feet west of the intersection. He then slowed down his car and proceeded to cross over Central avenue at the rate of about eight miles an hour. As he passed the center of that avenue, defendant's car going at a rate of about forty miles an hour crashed into the car of plaintiff, injuring him and practically destroying his automobile. There was testimony that plaintiff was traveling on the right side of the road and entered the intersection first, and when he had passed the center of Central avenue defendant's car going at a high rate of speed, crashed into plaintiff's car throwing him a distance of twelve feet. Some testimony was also given to the effect that if defendant's car had been on the right side of the road the collision would not have occurred. There was a conflict in the testimony as to the speed at which the cars were moving, as to the relative positions of the cars when the collision occurred, and as to some other questions. Upon the evidence the following answers were returned to special questions submitted to the jury:

"Q. 1. At what rate of speed was the Kersting car moving at the time of the accident? A. Eight miles per hour.

"Q. 2. At what rate of speed do you find the car driven by Reece was traveling at the time of the accident? A. Thirty-five miles per hour.

"Q. 3. Did the plaintiff look to the west before driving his automobile on to the paved road? A. Yes.

"Q. 4. If you answer the preceding question in the affirmative, state whether the plaintiff saw the Reece car approaching. A. No.

"Q. 5. If you answer the preceding question in the negative then state what, if anything, prevented the plaintiff from seeing such car. A. Ford car approaching from west.

"Q. 6. Was the manner in which the Kersting car was driven the proximate cause of the accident? A. No.

"Q. 7. Did the defendant Reece sound his horn upon approaching the intersection? A. No.

"Q. 8. At what point in the intersection did the accident occur? A. Northeast corner.

"Q. 9. What damages do you allow to the plaintiff for: (*a*) Damages to automobile? $425. (*b*) Personal injuries? $825."

The findings are supported by abundant testimony, and they establish culpable negligence on the part of the defendant and at the same time acquit the plaintiff of contributory negligence. It is argued that if plaintiff had looked towards the west as he approached the intersection he must have seen the defendant's car. When he looked to the west he did see a Ford car approaching, and the jury accounts for his failure to see the defendant's car because his vision was obstructed by the intervening Ford car, and it is not unreasonable that defendant's car was close behind the Ford car when the view was taken. At the crossing plaintiff reduced his speed to the rate of eight miles an hour, was first to enter the intersection and had passed the center of the road when the defendant's car collided with his. When he passed north of the center he was presumably out of danger. Even if he had seen defendant's car he had a right to assume that it would not be driven upon the crossing at an illegal speed or on the wrong side of the road. The defendant drove into the intersection at a speed four times greater than the law permits. That of itself constituted negligence, and if it was the proximate cause of the collision and injuries it warranted the finding that he was liable for the consequences of his unlawful act regardless of whether the defendant was on the right or wrong side of the road. As is usual in crossing collisions, there was a sharp conflict in the testimony as to the approach of the cars to the intersection, the speed at which they were driven and their relative

positions up to the point of impact, but these conflicts have been finally, and we think fairly, settled by the jury.

Complaint is made that plaintiff was permitted to testify as to the value of the wrecked car when it was not shown that he was qualified to state the value of such a car. There was testimony that he knew the price of a new car of that model, the mileage his car had been driven before he purchased it, the price then paid for it after it had been driven two years, the overhauling of it just before the accident at which time new parts were added, and their cost given. He had driven motor vehicles since 1917 and was sufficiently familiar with cars to overhaul his own. He had also learned the value or prices of secondhand cars, and had purchased and driven two of them. We think he was qualified and competent to testify as to the value of the car.

Objection is also made as to the admission of testimony of a physician, not as to his professional qualifications, but that his testimony was based on symptoms related to him by the plaintiff. The physician stated that the plaintiff had given him a history of the case to the effect that he had severe headaches lasting over long periods, that the posterior area of the skull back of the right ear was injured. The doctor testified that the only objective condition of a pathological nature found by him was a slight injury of the castle arch on the left side of plaintiff's head. He then stated that such an injury could come as a result of a traumatic neurosis and might result in the neurotic condition which he had found to exist. When the objection was made that the doctor could not give an opinion based on the statements of the patient, the court recognized the rule and stated that plaintiff would have to put it in the form of a hypothetical question, and without waiting for the preparation of a formal hypothetical question allowed the physician to proceed and testify as if a hypothetical question embracing the same facts had been asked. It will be noted that the doctor did not testify that the headaches resulted from the injury, but merely stated that they could have come from such an injury or accident. In his own behalf the plaintiff testified that the accident injured his head and side, that the injury was followed by severe headaches which interfered with his sleep at night, that he had to be propped up in bed, and that his nerves were affected. The testimony of the doctor should have been upon a hypothetical question, but in view of the

fact that the questions were received and treated as hypothetical, and further, in view of the evidence that was given, we think the admission of the testimony cannot be regarded as prejudicial error.

The defendant raised the question that motor vehicles driven on a paved road were entitled to precedence and right of way as against one driven across it on an unpaved road. Central avenue was hard surfaced while the intersecting road had been improved and sanded, and it is contended that vehicles on the paved road over which defendant was driving had the preference, and that defendant had a right to assume that the right of way would be yielded to him. On that question the court instructed the jury that:

"You are further instructed that the fact that the road known as Central avenue is a paved road does not operate to give to automobiles traveling on said highway any precedence or greater rights than automobiles traveling on highways intersecting said paved highway, except as herein otherwise instructed, that the driver of an automobile shall not operate his car at a greater rate of speed than is reasonable and proper, having regard for the traffic and use of the road and the condition of the road."

We have no statute nor do we know of any rule of the road requiring such a preference. It would be an invasion of the legislative field for a court to establish such a discrimination. To say that an improved road covered with one material would give a motorist the right of way as against one driving another road covered with a different material would be a radical innovation in the law of the road. It might be prudent and politic for the legislature to provide that a preference should be given to motor vehicles driven over primary and trunk lines as against those traveling over side roads, as is done in some cities where those approaching boulevards are required to slow down or stop before entering or crossing such favored roads, but the making of such a law or regulation is a legislative function and is not one for the courts. The legislature has provided a traffic regulation as to the speed of motor vehicles crossing an intersection of roads, but it stops short of giving a preference to vehicles on paved and much traveled roads or to those driven on north and south roads over those running east and west, and it must be assumed that the legislature was not ready to enact rules giving the right of way to motorists on concrete roads over those moving on sand or other roads not so well improved.

We find no material error in the record and the judgment is therefore affirmed.