No. 39,806

STATE OF KANSAS, *Appellee*, v. ROBERT EUGENE DEAN, *Appellant*.

(292 P. 2d 694)

Opinion filed January 28, 1956.

*Edward Rooney*, of Topeka, argued the cause, and *Jacob A. Dickinson, David Prager, William W. Dimmitt, Jr.*, and *Sam A. Crow*, all of Topeka, were with him on the briefs for the appellant.

*Maurice Freidberg* and *Robert M. Brown*, both of Topeka, argued the cause, and *Harold R. Fatzer*, attorney general, and *Roy L. Bulkley*, county attorney, Shawnee county, were with them on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This is an appeal by defendant Robert Eugene Dean from a conviction of manslaughter in the fourth degree (G. S. 1949, 21-420), arising out of an automobile collision between the car driven by him and one driven by Joseph John Boos, in which the latter was killed.

On the night of the fatal accident, defendant and some of his friends were giving a party as a farewell gesture for one of their acquaintances. The party started early in the evening and centered in a local tavern. As is usual in such environment, the farewell gayeties were had amidst the strains of a Combo band, and the tinkling of beer and whiskey glasses. The two boys who left the party with defendant admitted they had consumed considerable beer and whiskey, one stating he was drunk. Defendant told a police officer that he had consumed five beers and one drink of whiskey at the party, and later admitted that he had consumed two beers and one whiskey. At the time of this party, defendant was only seventeen years of age, but drinking was not new to him. He knew he was not supposed to, and his mother did not know that he was drinking. After leaving the party, defendant and his two friends stopped to make a call at the home of an acquaintance. Soon after this, the defendant was seen by a police officer, as he

was being chased by his friends. The officer stopped defendant and in the course of the conversation, defendant told him he was drunk and was mad because the boys were teasing him. The officer was of the opinion that he was under the influence of intoxicating liquor, but inasmuch as he was not then driving his automobile, he decided to give him a break and said for him not to drive, and for the other boys to take him home. His companions then drove to the 800 block on Kansas Avenue where defendant's car was parked. His friend, Corona, got into defendant's car to drive, but defendant insisted on driving it. Thus, with defendant driving under the influence of alcohol and his companion, Corona, admittedly drunk, they started home. This led them to driving east on Fourth Street and they approached the intersection of Fourth and Branner. This intersection was controlled by ordinary traffic lights, but inasmuch as it was after midnight, the normal red and green signals were not in operation. However, the amber light was flashing, which was the caution warning. Defendant testified that he did not know the speed he was traveling as the speedometer was not working. Corona testified that a block away from the intersection, defendant sounded his horn two or three times, but did not slow down. Defendant remembered nothing after crossing Klein Street, which was two blocks west of the intersection in question, although he testified he saw the caution light.

That night the decedent, Joseph Boos, after completing his night shift in company with two of his friends, headed for home in his automobile, which brought them traveling north on Branner Street toward the mentioned intersection. The two friends riding with him stated they approached the intersection approximately thirty miles per hour, and that decedent slackened his speed as they neared the corner. Neither of them saw defendant's car. At this time there was a pickup truck driven by Richard Holthusen, who had been traveling west on Fourth Street and had stopped at the intersection. He saw both cars approaching. The decedent's car was about one-fourth to one-half block south on Branner Street. The Dean car was approaching the intersection from about two blocks west on Fourth Street at an estimated speed of from fifty to sixty miles per hour. Defendant sounded four long blasts on his horn a block from the intersection, and one shortly after. The defendant's car continued without slackening its speed and struck the left side of decedent's car. The impact knocked the front of

decedent's car to the east. The back end made a complete circle, coming to rest on the curbing on the south side of the intersection. After the impact, defendant's car careened off to the north, struck the pickup truck which had stopped at the intersection, and finally came to rest against the retaining wall on the north side of Fourth Street. The pickup truck was knocked a distance of twenty-nine feet from the place where it was standing. Defendant was able to get out of his car after the accident. Boos and his two companions were found lying in the street almost against the retaining wall on the north side and partly under the pickup truck. Boos died on the way to the hospital from injuries received in the collision.

It is first contended by defendant that the trial court failed to adequately define culpable negligence, and point out to the jury the difference between it and ordinary negligence, so that the jury did not fairly know and have the full meaning and connotation of the culpable negligence necessary to constitute manslaughter in the fourth degree; that the court should have instructed that the word "culpable" as used in the statute means conduct denoting conscious or intelligent misconduct from which injury to someone is likely to result, and with reckless disregard of such consequences. The instruction given by the court, of which defendant complained, was as follows:

"In the statutes heretofore quoted, use has been made of the terms 'negligent disregard of the safety of others,' and 'culpable negligence' and this makes it necessary that the Court define the term 'negligence.' By 'negligence' is meant the want of ordinary care, and may consist of acts of commission or acts of omission. When a person does what an ordinarily prudent person would not be expected to do under the circumstances of a situation, he is said to be negligent; or where a person fails to do what an ordinarily prudent person would be expected to do under the circumstances, he is said to be negligent. By the term 'culpable' is meant blameworthy. Culpable negligence is the failure to exercise that degree of care which is required in a particular instance, though the party may have exercised some care, but of a less degree than a reasonably prudent person, under the same circumstances, would have exercised; and as used in the manslaughter statute means negligence that is punishable criminally."

We are of the opinion that the trial court sufficiently defined both the word "negligence" and "culpable." In State v. Custer, 129 Kan. 381, 282 Pac. 1071, 67 A. L. R. 909, we defined "culpable" as follows:

"The lexicons tell us that Cicero and Horace used the word 'culpa' in the sense of crime; fault; and in some metonymic senses. Formerly, the primary

meaning of the English word 'culpable' was criminal; deserving punishment. Doctor Johnson's dictionary defined the word thus: Criminal (*Shak.*); guilty (*Spenser*); blameworthy (*Hooker*). In popular use the primary meaning has now shaded down to: deserving blame or censure; blameworthy. (Oxford English Dictionary.)" (p. 385.)

It was further stated there can be no doubt that when the phrase "act, procurement, or culpable negligence" was coined, "culpable," in legal parlance, referred to guilt whenever crime was the topic; and the strong probability is that the term "culpable negligence," used in a manslaughter statute, meant negligence punishable criminally.

Ballentine's Law Dictionary, Second Edition, in defining "culpable" said the word meant not only criminal but censurable, and "culpable negligence" as the want of that usual and ordinary care and caution in the performance of an act usually and ordinarily exercised by a person under similar circumstances and conditions. The omission to do something which a reasonably prudent and honest man would do, or doing something which such a man would not do under all the circumstances surrounding each particular case.

Webster's New International Dictionary, Second Edition, defines "culpable" as deserving censure or moral blame, reprehensible, *blameworthy*. The same authority defines "blameworthy" as deserving blame, culpable, reprehensible.

The jury was given certain elements to first consider before it could find culpable common law manslaughter negligence, some of which were: (1) That defendant's conduct must be blameworthy, i. e., his attitude must have been deserving of blame or censure; (2) that in addition, culpable negligence also consists of that failure to exercise the degree of care that is required in a particular instance, though the party may have exercised some care, but of a less degree than a reasonably prudent person under the same circumstances would have exercised, and (3) culpable negligence as used in the manslaughter statute meant negligence that was punishable criminally. The instruction on culpable negligence, under the circumstances, considered with other instructions as a whole, adequately complied with the standards set down in *State v. Custer*, supra, and subsequent cases.

The second point made by defendant is that the court should have submitted to the jury by proper instruction the question whether the truck driver, Holthusen, was responsible for the death of the decedent, independent of any negligence on the part of de-

fendant. The gist of defendant's contention is that after the accident, decedent was pulled from under the Holthusen truck which had previously stopped at the east curbing of Branner Street, and that Holthusen may have backed the truck over decedent's body causing his death. There is no evidence in the record to sustain defendant's contention that the truck in any manner was the cause of or contributed to the death of Boos. After the collision, decedent's body was lying slightly to the north and right side of the truck. The evidence was that the truck had stopped and remained standing until it was struck by defendant's car, and knocked backward some twenty-nine feet.

Defendant also contends the court erred in refusing his requested instruction that the negligence of decedent was the proximate cause of his own death and, while contributory negligence on the part of the decedent does not exonerate the defendant, yet the rule is otherwise if the jury should find or have a reasonable doubt whether such contributory negligence was the proximate cause of the death of decedent.

A review of the record fails to disclose any evidence that the decedent was guilty of any negligence as a matter of law or fact, and the requested instruction was properly refused. An instruction on contributory negligence is proper only when warranted by the evidence. The uncontradicted evidence in the record is that decedent, after completing his night shift in company with two friends, drove north on Branner Street at approximately thirty miles an hour; that he slackened his speed as he reached the intersection controlled by an amber traffic light; that no cars were in sight and he proceeded to enter the intersection, when a car traveling at the rate of fifty to sixty miles an hour driven by defendant, in an intoxicated condition, without slackening its speed, struck decedent's car.

It is well established in this jurisdiction that operators of vehicles upon the streets and highways may assume that others using such streets and highways will observe the law and are not guilty of negligence as a matter of law, in acting upon that assumption until they have knowledge to the contrary. (*Bishop v. Huffman*, 175 Kan. 270, 272, 262 P. 2d 948, and cases therein cited.) It cannot be said that decedent was guilty of contributory negligence in failing to anticipate that, at this traffic controlled intersection, defendant in an intoxicated condition would be operating his automobile at

the rate of fifty to sixty miles per hour, without slackening its speed or giving timely warning of his approach, and in utter disregard of others using the streets at the time and place in question.

The trial court properly instructed on proximate cause. In Instruction No. 14, the court told the jury that before the defendant could be convicted, the state must prove to its satisfaction beyond a reasonable doubt that the death of Boos was the proximate result of the injury received by reason of the alleged negligence of the defendant, and that an injury to be the proximate result of an act is one which follows an act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another which, had it not happened, the injury would not have resulted.

Defendant's final contention is that the court erred in giving Instruction No. 16 which reads:

"You are instructed that the natural and probable consequences of every act deliberately done by a person of sound mind, are presumed to have been intended by the author of such act; but this presumption is subject to being disproved by the testimony in the case, and you must determine from all the facts and circumstances proved whether any such intent existed at the time."

It is noted that defendant made no objection to this instruction when given, nor did he request a more detailed instruction. Moreover, the giving of the instruction was not assigned as error or argued to the trial court on the motion for new trial, and defendant cannot complain at this late hour. (*State v. Anderson,* 172 Kan. 402, 407, 241 P. 2d 742.) Nevertheless, in effect, the presumption set out in the first portion is made rebuttable by the last part of the instruction. This instruction, in substance, was approved in *State v. Sweetin,* 134 Kan. 663, 8 P. 2d 397; *State v. Hathaway,* 143 Kan. 605, 609, 56 P. 2d 89; *State v. Wilfong,* 114 Kan. 689, 220 Pac. 250; *State v. Dull,* 67 Kan. 793, 74 Pac. 235; *State v. Sorter,* 52 Kan. 531, 34 Pac. 1036.

In view of what has been said, the trial court did not err (1) in the instructions which it gave to the jury and, (2) in refusing to instruct with respect to contributory negligence and intervening cause.

The judgment is, therefore, affirmed.