No. 44,958

W. W. Harbaugh and Helen Harbaugh, *Appellants,* v. Adeline Darr, *Appellee.*

(438 P. 2d 74)

Opinion filed March 9, 1968.

*Tudor W. Hampton,* of Great Bend, argued the cause, and *Jerry M. Ward* and *Herb Rohleder,* also of Great Bend, were with him on the brief for the appellants.

*J. Eugene Balloun,* of Great Bend, argued the cause, and *H. Lee Turner* and *Max E. Eberhart,* also of Great Bend, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a damage action by the natural mother and adoptive father of a child who was killed in an automobile accident west of Great Bend, Kansas, on the 20th day of August, 1963. A jury absolved the defendant of any negligence and appeal has been duly perfected to this court.

Questions presented pertain to the sufficiency of evidence and other alleged trial errors.

Helen Harbaugh, one of the plaintiffs herein, on the 20th day of August, 1963, permitted her daughter, Cynthia, age eight, to ride with Ruby Quinby from Great Bend to the city of Larned. Ruby Quinby was Helen Harbaugh's sister and the aunt of Cynthia.

On the way to Larned Mrs. Quinby had an accident with a motor vehicle driven by Adeline Darr which resulted in the death of Cynthia. The action was originally filed by the plaintiffs against Adeline Darr and Ruby Quinby, but was later dismissed as to Mrs. Quinby.

The scene of the accident is about four miles west of Great Bend, Kansas, at the intersection of two black-top county highways. Mrs. Quinby was approaching the intersection from the north and going in a southerly direction, while Mrs. Darr was approaching the intersection from the east going in a westerly direction. The accident occurred just before noon and the black-top roads, both approximately 26½ feet wide, were dry and in good condition. The road on which the Darr vehicle was traveling is a "through" highway, protected by a "Yield Right-of-Way" sign, which was located at the intersection of the black-top highway used by the Quinby vehicle.

In the northeast quadrant of the intersection was a maize field which had obstructed the view of the drivers as they approached the intersection. This field was situated about 174 feet east of the north-south road upon which the Quinby vehicle was traveling. Between the maize field and the north-south road were weeds, grass and sunflowers and a drainage ditch in which there were weeds and grass. This was an additional obstruction to the vision of the drivers. As the vehicles approached the intersection their view of each other was completely obscured except for two low spots in the maize field when the tops of the vehicles could have been seen had

the drivers looked at precisely the right instant. As a practical matter, this would be a blind, obstructed intersection as far as the maize field is concerned. One proceeding in a westerly direction approaching the intersection in question, after passing the maize field, would encounter the weeds and sunflowers which still constituted a substantial obstruction to the drivers' view.

There was evidence to indicate the Quinby vehicle approached the intersection between 60 to 70 miles per hour. On direct examination Mrs. Quinby said she was going 50 miles per hour and slowed possibly to 40 miles per hour, since an intersection always means yield the right-of-way to her. Mrs. Quinby had driven over this road and had been through this intersection many times. North of the intersection on the road traveled by the Quinby vehicle was a "Slow" sign 778 feet from the intersection; 584 feet from the intersection was a "Crossroad" sign; and approximately 22 feet from the intersection was a "Yield Right-of-Way" sign. When Mrs. Quinby first saw the Darr vehicle approaching from the east she immediately applied her brakes and left skid marks of 43.3 feet for the right tires, and 36.2 feet for the left tires prior to the point of impact, which was approximately at the center of the intersection.

The Darr vehicle approached the intersection at 40 to 45 miles per hour and slowed to 30 to 40 miles per hour before reaching the intersection. Mrs. Darr passed a "Slow" sign 783 feet from the intersection and a "Crossroad" sign 586 feet from the intersection. Mrs. Darr knew the road on which she was traveling was protected by a "Yield Right-of-Way" sign. Although Mrs. Darr had looked to the north several times, she did not see the Quinby vehicle prior to entering the intersection. The Darr vehicle entered the intersection prior to the Quinby vehicle.

It is conceded that Mrs. Quinby was negligent in going through the "Yield Right-of-Way" sign at the intersection, and she knew that a "Yield" sign meant that she had to stop if other traffic was approaching the intersection. Her negligence, however, is not imputed to Cynthia Harbaugh, her deceased passenger, or to the plaintiffs in this action.

The plaintiffs (appellants) assert that the sole question for determination in the case is whether Mrs. Darr (defendant-appellee) was guilty of negligence that contributed to the accident.

The trial was had to a jury which found "the defendant, Adeline

Darr not guilty." Judgment was entered on the verdict for the defendant and appeal has been duly perfected. The appellants challenge an order of the trial court overruling the plaintiffs' motion for a directed verdict; the court's submission of instructions on the emergency doctrine to the jury; and the submission of improper special questions to the jury. A cross appeal was taken by the defendant challenging the trial court's order overruling her motion for a directed verdict, both at the close of the plaintiffs' evidence and at the close of all the evidence, the defendant contending that the evidence disclosed she was not negligent as a matter of law.

What are the rights and duties of the drivers approaching an intersection at right angles when one of the drivers is protected by "Yield Right-of-Way" signs? We have been cited to no cases and our research has disclosed none in which such traffic control sign has been litigated in our court.

In the instant case the road on which the Darr vehicle was traveling was protected by "Yield Right-of-Way" signs; and the Quinby vehicle was under an obligation to yield the right-of-way, which under our statutes, on the facts in this case, required the Quinby vehicle to stop and let the Darr vehicle pass.

K. S. A. 8-552 in pertinent part provides:

"(a) Preferential right of way at an intersection may be indicated by stop signs or yield signs as authorized in section 8-568 of the General Statutes of 1949 as amended.

. . . . . . . . . . . . . .

"(c) The driver of a vehicle . . . approaching a yield sign shall in obedience to such sign slow down to a speed reasonable for the existing conditions, or shall stop if necessary as provided in section 8-568 of the General Statutes of 1949 as amended, and shall yield the right of way . . . to any vehicle in the intersection or approaching on another highway so closely as to constitute an immediate hazard. Said driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection shall yield to the vehicle so proceeding: *Provided, however,* That if such driver is involved in a collision with a . . . vehicle in the intersection after driving past a yield sign without stopping, such collision shall be deemed prima facie evidence of his failure to yield right of way."

The authority to erect such signs and the meaning thereof is contained in K. S. A. 8-568, which in pertinent part provides:

"(a) The state highway commission with reference to state highways, and local authorities with reference to other highways under their jurisdiction, may designate through highways and erect stop signs or yield signs at specified entrances thereto, or may designate any intersection as a stop intersection or

as a yield intersection and erect stop signs at one or more entrances to such intersection.

"(b) Every stop sign and every yield sign shall be erected as near as practicable to the nearest line of the crosswalk or the near side of the intersection or, if there is no crosswalk, then as near as practicable to the nearest line of the intersecting roadway.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(d) Every yield sign shall bear the word 'yield' in letters not less than seven (7) inches in height.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(f) The driver of a vehicle approaching a yield sign if required for safety to stop shall stop before entering the crosswalk on the near side of the intersection or, in the event there is no crosswalk, at a clearly marked stop line, but if none, then at a point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway."

Under the foregoing statutes, if an approaching vehicle is close enough to constitute an immediate hazard, the duty of a driver approaching the "Yield Right-of-Way" sign is the same as that of a driver approaching a "Stop" sign. The duty is to reduce the speed to zero, to stop if required for safety, in the case of a "Yield Right-of-Way" sign, and yield to the vehicle close enough to constitute an immediate hazard.

Since the law with respect to one using a highway protected by "Stop" signs at an intersection is applicable to the situation at hand, we turn to the cases thereon. The rule is stated in *Keir v. Trager*, 134 Kan. 505, 7 P. 2d 49, 81 A. L. R. 181 (approved in *Gardner v. Pereboom*, 197 Kan. 188, 416 P. 2d 67). There the appellants insisted that the appellee traveling on the protected highway had no right to rely on the "Stop" sign at the junction of the street and highway; that it was the duty of the appellee, having admitted she saw the appellants' vehicle approaching the intersection, to stop her car and concede the right-of-way to the appellants. The court said:

". . . It was therefore unlawful for the appellants to enter the highway without coming to a full stop. . . . The law is well established that the operator of an automobile in a public highway may assume others using the highway will observe the law of the road, and he is not guilty of contributory negligence in acting upon such assumption unless and until he has knowledge to the contrary. (*Kersting v. Reese*, 123 Kan. 277, 255 Pac. 74; I Berry on Automobiles, 6th ed., p. 189, sec. 225.) The appellee was acting wholly within her rights in assuming that the appellants would stop before entering the highway, and she cannot be charged with negligence in acting upon such assumption. She can only be charged with negligence under such circum-

stances from the time that she had knowledge that the appellants intended to disobey the stop sign and enter upon the highway. After she had such knowledge she was bound to use the care of an ordinarily prudent person.

". . . the appellee's testimony is that when she observed that the appellants did not intend to stop she put on her brakes and attempted to stop the car and avoid the collision. Under these facts and circumstances we cannot say that the appellee was guilty of contributory negligence as a matter of law, and the trial court properly overruled the demurrer to the evidence." (pp. 507, 508.)

The same rule was applied in *State v. Dean,* 179 Kan. 24, 292 P. 2d 694.

In *Wilson v. Cyrus,* 180 Kan. 836, 308 P. 2d 98, the following language was used in stating the rule:

". . . The law is well established that the operator of an automobile may assume that others using the highway will observe the law of the road, and one is not guilty of negligence in acting upon such assumption unless and until he has knowledge to the contrary. . . . It is equally well settled that as a matter of law one is not guilty of negligence who does not look for danger where there is no reason to apprehend any. (*Fowler v. Mohl,* 172 Kan. 423, 427, 241 P. 2d 517.) . . ." (pp. 838, 839.)

Where the defendant knew she was driving on a protected highway, she had the right to assume any car approaching from the north would observe the law of the road, and would stop and yield the right-of-way at the intersection. Under these circumstances the defendant cannot be held guilty of negligence in acting upon this assumption unless and until she had knowledge to the contrary.

The plaintiffs in the instant case rely on the testimony of the defendant that she did not see the Quinby vehicle prior to the collision.

Under the foregoing rules we do not think the defendant was guilty of negligence as a matter of law, and the trial court did not err in overruling the plaintiffs' motion for a directed verdict.

On the other hand, we do not think on the evidence in this case the defendant was entitled to a motion for a directed verdict, either at the close of the plaintiffs' evidence or at the close of all the evidence, and the trial court did not err in overruling the defendant's motions. The question of the defendant's negligence in this case was one of fact for the jury to resolve upon all the evidence in the case under the instructions given by the trial court. (*Borggren v. Leibling,* 198 Kan. 161, 422 P. 2d 884; and *Gard v. Sherwood Construction Co.,* 194 Kan. 541, 400 P. 2d 995.)

The appellants contend the trial court erred in giving an instruction on the emergency doctrine over their objection.

It is rather difficult to see how an instruction under the doctrine of sudden emergency has any application to the evidence in this case, particularly where the defendant testified she did not see the Quinby vehicle prior to the accident, and bearing in mind that it is only the defendant's negligence, if any, that was to be determined in the case.

However, upon all the instructions given and the evidence presented by the record in this case, we do not think the giving of the instruction on sudden emergency was prejudicial to the appellants.

The next point raised by the appellants is that the trial court erred in submitting two special questions to the jury.

The special questions submitted to the jury and the answers given thereto are as follows:

"1. From the evidence you have heard in court do you find that Helen Harbaugh Martin had reason to believe Mrs. Ruby N. Quinby was a careless driver prior to the time Ruby N. Quinby left the City of Russell on August 20, 1963?

"ANSWER: Yes.

"2. If you answered the foregoing question in the affirmative do you find that Mrs. Helen Harbaugh Martin should have declined to grant her daughter Cynthia permission to ride in the car driven by Mrs. Quinby?

"ANSWER: Yes."

While the appellee concedes the submission of these special questions to be erroneous, she contends the questions dealt with an issue immaterial to the lawsuit as set out in the court's instructions. The trial court did not submit to the jury an issue concerning negligence on the part of the plaintiff, Helen Harbaugh, nor did it submit an instruction defining contributory negligence or its effect on the plaintiffs' lawsuit. In fact, the trial court specifically refused to give such instruction.

The trial judge conceded in ruling on the motion for a new trial that he was not "real proud of having asked those questions."

While Mr. Harbaugh was testifying he was cross-examined as follows:

"Q. Now, both you and your wife knew from past experience that Mrs. Quinby was a careless driver, did you not, sir?

"A. No, I did not. I had never ridden with her. Any opinion I formed in that connection was from conversation with my wife.

"Q. Before this accident occurred your wife had told you, from time to time, that Mrs. Quinby was very careless and a reckless driver?

"A. No, not specifically, no."

On further cross-examination it appears that Mr. Harbaugh was questioned from a deposition he had previously given, wherein he conceded that his wife told him Mrs. Quinby "was a careless driver."

The trial judge was correct when he stated the evidence was very slight and certainly not convincing that Mrs. Quinby was a well-known reckless and careless driver. He should not have submitted the special questions to the jury after his refusal to instruct on the point, and the submission of such questions to the jury was erroneous.

At best, the special findings of the jury express disapproval of Helen Harbaugh's conduct, but it would be speculative to say they are expressive of a finding of negligence, a factor the appellee would have argued had the jury been charged on this issue.

The question posed is whether the submission of these questions and the answers given show prejudice which requires the granting of a new trial. We think not. It must be remembered that nothing will be presumed in aid of special findings and that every reasonable presumption will be indulged in favor of the general verdict. Therefore, unless special findings clearly overthrow the verdict, the latter must be permitted to stand. (*Underhill v. Motes*, 160 Kan. 679, 165 P. 2d 218; and *Grigsby v. Jenkins*, 183 Kan. 594, 331 P. 2d 284.) Here the general verdict of the jury found the defendant, Adeline Darr *not guilty* of negligence. Upon such verdict the special findings as to Helen Harbaugh, one of the plaintiffs, became immaterial.

We hold the giving of the special questions and the answers thereto, while erroneous, did not affect the substantial rights of the parties. (K. S. A. 60-261.) Upon the whole record substantial justice has been done by the judgment of the trial court. (K. S. A. 60-2105.)

The judgment of the lower court is affirmed.

O'Connor, J., dissenting: I cannot agree that the submission of the special questions did not affect the substantial rights of the plaintiffs, and therefore, respectfully dissent from Syllabus ¶ 5 and the corresponding portion of the majority opinion.

The alleged prejudicial effect of submitting the special questions cannot be determined by saying the answers are not inconsistent with the general verdict. Regardless of how the questions were answered, they would never be inconsistent or in conflict with the

general verdict, and therefore, never prejudicial. The posture of the case was such that submission of the questions was fraught with the risk of prejudice, and to say that the jury was not influenced by their submission is too speculative to let the general verdict stand.

The right of a litigant to have material and relevant issues determined by a jury in the form of a general verdict should not be jeopardized by the submission of special questions wholly outside any of the issues in the case. The code of civil procedure requires that if the court, in its discretion, submits special questions along with a general verdict, the questions must relate to *one or more substantial questions of disputed facts on which decision is necessary to a verdict.* (K. S. A. 60-249 [*b*]; Advisory Committee Notes, Gard, Kansas Code of Civil Procedure, Annotated § 249.) The questions here neither related to an issue in the case, nor was their determination necessary to the verdict.

There was testimony that Cynthia's mother, one of the plaintiffs, had said Mrs. Quinby was a careless driver. The court ruled, however, the evidence was insufficient for the jury to determine Mrs. Quinby was well known as a reckless and careless driver. The court further determined the negligence of Mrs. Quinby was not imputable to the plaintiffs, and refused to give an instruction on contributory negligence. Notwithstanding these rulings, about which no complaint is now made, the court, over plaintiffs' objection, submitted the special questions and instructed the jury "to answer each of these questions . . . in accordance with the evidence of the case."

With some evidence before the jury that Mrs. Harbaugh thought Mrs. Quinby was a careless driver, the submission of the questions and the court's instruction could leave the jury with only the impression that the questions were material and relevant to the general verdict. The questions pertained to the possible negligence of Mrs. Harbaugh, but no instruction on contributory negligence or its effect on the plaintiffs' right to recover had been given to the jury. Under the circumstances, the jury was put adrift on a matter that, in my opinion, may well have influenced the general verdict—at least the risk of prejudice is so great I would reverse the judgment and remand the case with directions to grant a new trial.

FATZER, J., joins in the foregoing dissent.