Deborah **LOPRESTO**; Joseph **Lopresto**; Emilie **Jansen**, an infant, by her father, Thomas **Jansen**; and **Thomas Jansen**, individually, Plaintiffs,

v.

**ANR PIPELINE COMPANY**, **Mackie D. Ross**, and **Kim D. Myers**, Defendants.

Deborah **LOPRESTO**; Joseph **Lopresto**; Emilie **Jansen**, an infant, by her father, Thomas **Jansen**; and **Thomas Jansen**, individually, Plaintiffs,

v.

**ANR PIPELINE COMPANY** and **Mackie D. Ross**, Defendants.

Nos. 96–1265–JTM, 96–1359–JTM.

United States District Court, D. Kansas.

Nov. 4, 1997.

James J. Long, Donald S. Andersen, Andersen & Long, Wichita, KS, Charles S. Gucciardo, Gucciardo & Bower, New York, NY, for Deborah Lopresto, Joseph Lopresto, Thomas Jansen.

James J. Long, Donald S. Andersen, Andersen & Long, Wichita, KS, for Emilie Jansen.

James W. Seitz, Richard L. Honeyman, ALan R. Pfaff, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, KS, for ANR Pipeline Co., Mackie D. Ross.

Roger W. Warren, Jana V. Richards, Blackwell, Sanders, Matheny, Weary & Lombardi, L.L.P., Overland Park, KS, for Kim D. Myers, Lansdale Chrysler Plymouth, Inc.

## MEMORANDUM ORDER

MARTEN, District Judge.

On July 28, 1994, Kim Myers was driving one of three vans which was returning to the New York area from a church mission trip in New Mexico. Inside the van driven by Myers, which had been leased from Lansdale Chrysler Plymouth, were two minor children, Deborah Lopresto and Emilie Jansen. At approximately 5:45 p.m., as Myers was driving east on U.S. Highway 54 through Mullinville, Kansas, her vehicle was struck by a Ford Bronco driven by Mackie Ross and owned by Ross's employer, ANR Pipeline Co.

Lopresto and Jansen, along with their respective next friends and guardians, have brought the present action against Ross and ANR. When ANR and Ross raised claims of fault against Myers, the plaintiffs also advanced a residual claim for relief against her, in the event the defendants were able to persuade a jury of Myers' fault. A claim against Lansdale Chrysler Plymouth has been dismissed on stipulation of all parties.

The court has previously addressed the matter as it relates to personal jurisdiction over the parties. The case is currently before the court with three motions pending, all of which relate to the same underlying issue—whether there is any evidence of negligence on the part of Myers. First, Myers has herself moved for summary judgment on this basis. Second, the plaintiffs have moved to strike the comparative fault claims which ANR and Ross have advanced against Myers. Finally, the plaintiffs have also moved to consolidate the two motions.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital,* 854 F.2d 365,

367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.'*" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The collision occurred at the intersection of Highway 54 and Main Street in Mullinville. At this point, the eastbound and westbound lanes of Highway 54 are divided by a grass median. At the time of the accident, Ross was travelling south on Main. As traffic on Main approaches Highway 54, it first meets a stop sign located immediately north of the westbound lane, and subsequently a yield sign located in the grass median.

Deborah Lopresto and Emilie Jansen were apparently asleep at the time of the accident. They have testified they have no memory of the events leading up to it.

Myers first saw the Bronco as it was just entering the westbound lane of Highway 54 and had not yet reached the yield sign at the grass median. Myers then turned her attention back to the road, and did not see the Bronco again until it pulled out in front of her. Myers's vehicle did not leave any skid marks prior to the collision.

There is conflicting evidence as to Ross's conduct. Ross now testifies that he stopped at the stop sign and slowed down at the yield sign. An independent witness, Fernando Perez, has testified that he saw Ross's Bronco when it was "a couple of car lengths" north of the stop sign and travelling approximately 40–45 miles per hour. (Perez dep. at 8). Perez testified Ross "bypassed" the stop and yield signs. (Id.) After the accident, Ross was ticketed for failure to yield and subsequently pled guilty to this charge. Ross has admitted he did not believe Myers had a duty to stop or slow down at the intersection.

It is uncontroverted that there was nothing in the area of the intersection which would have obstructed the view of either driver.

### Conclusions of Law

Ross and ANR have raised several allegations against Myers, including that she was driving too fast, that she failed to maintain a lookout, and that she failed to brake her vehicle. There appears to be no evidence to support any of these allegations. There is no evidence Myers was travelling at an illegal or an unsafe speed prior to the accident. There is no evidence Myers had time to apply her brakes so as to successfully avoid the accident.

■ The key dispute between the parties is focused on the effect of the yield sign which protected eastbound traffic on Highway 54. Ross and ANR argue the presence of the sign does not reduce or eliminate Myers's duty to maintain a lookout for traffic entering the intersection. In support of this argument, the defendants cite a number of Kansas decisions which have found fault to be a jury question under various circum-

stances. *See Morris v. Hoesch,* 204 Kan. 735, 466 P.2d 272 (1970); *Prior v. Best Cabs,* 199 Kan. 77, 427 P.2d 481 (1967); *Jarboe v. Pine,* 189 Kan. 44, 50, 366 P.2d 783 (1961); *Putter v. Bowman,* 7 Kan.App.2d 323, 325, 641 P.2d 411, 414 (1982) (whether plaintiff "had an opportunity to reduce his speed or avoid the collision after he had reason to know the truck was going to turn in front of him was a jury question").

However, Ross and ANR read these decisions much too broadly; Kansas law clearly supports an award of summary judgment under the facts present in the case. None of the decisions cited by Ross and ANR involve facts similar to the present case—an accident at an intersection protected by a yield sign. In *Putter,* a grain truck turned left in front of the motorcyclist, but there is no evidence the plaintiff was protected by anything other than a general right of way.

Similarly, in *Jarboe,* the accident happened at an intersection in Lawrence which was apparently not protected by stop or yield signs. The court concluded a driver with the right of way "even though he has the right to assume others traveling on the public street or highway will comply with the obligation imposed upon them, is not absolved of the consequence of his own independent negligent acts." 189 Kan. at 50, 366 P.2d 783.

Unlike either of these cases, the accident in *Prior* did occur at an intersection protected by a stop sign. The court concluded that the trial court had correctly compared the fault of the plaintiff motorcyclist driving north on Broadway. However, critical to the court's conclusion was evidence relating to another vehicle already in the intersection as the plaintiff approached it:

> Our examination of the record discloses the instruction to have been properly given *because the evidence established the existence of another vehicle in the intersection* making a left turn onto Broadway from the stop sign at the east side of the intersection.

The mere fact that one is traveling on a through highway protected by stop signs on both sides does not give him the right to travel through an intersection with undi-minished speed *where there is other traffic congesting the intersection.*

199 Kan. at 80, 427 P.2d 481 (emphasis added). *Prior* is not controlling here since there is no evidence at all before the court that Myers knew or had reason to know the intersection was congested with other traffic.

Similarly, in *Morris v. Hoesch,* although the accident occurred at an intersection protected by a yield sign, there was additional and specific evidence of negligence by the plaintiff. The Supreme Court specifically noted evidence which indicated (1) that the plaintiff had been drinking, (2) that the plaintiff *never* looked for or saw the defendant's Volkswagen minibus, and (3) that the defendant's minibus was traveling "very slowly" through the intersection at the time of the accident. 204 Kan. at 739, 466 P.2d 272.

One Kansas case which apparently is on point is *Harbaugh v. Darr,* 200 Kan. 610, 615, 438 P.2d 74 (1968). In that case also a collision occurred at an intersection protected by a yield sign. After summarizing various statutes, the court concluded:

> Under the foregoing statutes, if an approaching vehicle is close enough to constitute an immediate hazard, the duty of a driver approaching the "Yield Right–of–Way" sign is that same as that of a driver approaching a "Stop" sign. The duty is to reduce the speed to zero, to stop if required for safety, in the case of a "Yield Right–of–Way" sign, and yield to the vehicle close enough to constitute an immediate hazard . . . . .

> Where the defendant knew she was driving on a protected highway, she had the right to assume any car approaching from the north would observe the law of the road, and would stop and yield the right-of-way at the intersection. Under these circumstances the defendant cannot be held guilty of negligence in acting upon this assumption unless and until she had knowledge to the contrary.

200 Kan. at 614–15, 438 P.2d 74.

In sum, it would appear that a distinction has been drawn in Kansas law between accidents in which one party was protected by a mere general right of way, and

those in which there was an additional protection given by yield signs, stop signs, or stop lights.[1] In the latter group of cases, fault may be shown only where there is some additional evidence the driver protected by the traffic signs or signals either maintained no lookout or ignored a manifest hazard. Absent such evidence, the rule established in *Harbaugh* supports judgment as a matter of law.

In the present case there is no evidence Myers knew the intersection was congested or that Ross's vehicle would not yield. There is also no evidence that, once Ross's vehicle pulled out, Myers had time to react to prevent the accident. Given the evidence in the case, the court must grant all the outstanding motions.

IT IS ACCORDINGLY ORDERED this 4th day of November, 1997, that the Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 67), Plaintiffs' Motion to Consolidate (Dkt. No. 85), and Defendant Myers's Motion for Summary Judgment (Dkt. No. 65) are granted.

---

1. *See Hudson v. Yellow Cab,* 145 Kan. 66, 69, 64 P.2d 43 (1937) (intersection controlled by traffic lights).