No. 38,181

Ruby DeGraw, as next of kin of Frank DeGraw, Deceased, on behalf of herself and Children, *Appellee*, v. Kansas City and Leavenworth Transportation Company, a Corporation, and The American Fidelity and Casualty Company, a Corporation, *Appellants*.

(228 P. 2d 527)

Opinion filed March 10, 1951.

*J. O. Emerson* and *Harry S. Roberts*, both of Kansas City, argued the cause, and *Edw. M. Boddington* and *Edward M. Boddington, Jr.*, both of Kansas City, and *David Trusty*, of Kansas City, Missouri, were with them on the briefs for the appellants.

*James K. Cubbison*, of Kansas City, argued the cause, and *Blake A. Williamson* and *Lee Vaughan*, both of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is an appeal from a verdict and judgment in favor of plaintiff widow in an action brought by her on behalf of herself and two minor children for the wrongful death of her husband, resulting from a highway collision.

The collision occurred on State Highway No. 5, a few miles west of Kansas City, Kan., about 2:30 p. m., on January 26, 1948. Plaintiff's husband was riding in a Ford panel truck being driven by his brother, and the other vehicle was a passenger bus, owned and operated by defendant transportation company, and being driven by one Garner, who originally was made a party defendant in the action. At the commencement of the trial plaintiff dismissed as to him.

The highway was of concrete slab, eighteen feet in width. It, as well as the surrounding countryside, was coated with ice and snow. The truck was headed west, the bus east. The point of collision was about one-third of the way down a long grade or hill up which the bus was proceeding. No other vehicle was involved.

Several passengers on the bus testified for plaintiff. One, who was sitting three seats behind the driver on the left side, estimated the hill which the bus was climbing to be about 700 feet long, and stated that when he first saw the panel truck the bus had already started climbing the hill; that it was traveling forty or forty-five miles per hour; the highway was slippery, just like "glass"; that as the truck came over the hill it started skidding "all over the road";

that there was nothing to prevent the driver of the bus from seeing the truck, and that the bus proceeded on up the hill on its own right side of the highway.

Another witness, who had been seated in about the center of the bus on the left side, but who had not seen the truck, estimated the speed of the bus at about fifty-five miles per hour, and that it did not change or slacken its speed prior to the collision.

A third witness, a nurse, had been seated in the extreme rear seat extending across the rear of the bus. She saw the truck as it came over the brow of the hill; it was skidding back and forth on the ice, "fighting the hill"; most of the time it was over in the wrong lane; it was coming fairly slowly; the bus was traveling forty or forty-five miles per hour; it did not at any time reduce its speed, but continued right on up the hill in its own traffic lane, despite the fact such lane was occupied and blocked most of the time by the skidding truck. She had seen the truck some 600 or 700 feet away, and in attempting to "prepare" for what appeared to her as inevitable threw her coat over the face of the girl riding next to her.

Another witness had been sitting a little behind the bus driver on the left side, and he testified that he saw the panel truck just as it came over the hill; that it was out of control and on its left side of the highway, and he estimated the speed of the bus at "35 or 40, maybe faster." According to him the truck was moving slowly, about ten or fifteen miles per hour, but was "zigzagging back and forth," and that when he last saw the truck the vehicles were still some 300 feet apart. This witness was knocked unconscious as a result of the collision.

The sheriff arrived at the scene shortly after the collision and he found the bus pointed northeast, with its front end over on the north (left) side of the slab. The truck was practically demolished. He quoted the bus driver as stating that when he got to the bottom of the hill he saw the truck coming from the east, sliding down the hill toward him; that it was on both sides and all over the highway coming down the hill, but that he couldn't get out of the way because of a terrace on each side of the highway. An accident report was introduced in which the bus driver stated that the truck came over the hill sliding sideways across the highway. This witness described the icy conditions and testified that the shoulder of the highway along the south side was ten or twelve feet wide, with no ditch.

Another witness, who came on the scene shortly after the collision, testified that it looked as though "someone had picked the bus up and set it down on top of the Ford."

An engineer, who had made measurements of the hill, testified that it was approximately 775 feet long, was about a five percent grade, and that the collision, according to information supplied to him, occurred about 325 feet from the top of the hill. He also calculated that an object the height of an automobile would be visible at a distance of 112 feet over and beyond the top of the hill. According to him, the north shoulder was nine feet wide and the south shoulder six feet wide at the point of collision.

Plaintiff's husband was decapitated in the collision. He was in good health, thirty-four years of age, was a plumber earning $90 per week, and was the sole support of plaintiff and their two young children. It was stipulated that he was killed as a result of the collision, and that he and his brother, who also was killed, were at the time engaged in a joint enterprise, so that the negligence of the brother, if any, was imputable to him. The bus driver did not testify.

Defendants' demurrer to plaintiff's evidence was overruled. Defendants offered no evidence whatsoever. The jury was instructed in writing and returned a verdict for plaintiff in the sum of $15,000, the amount prayed for, and answered one special question, in which it found that at the moment of impact the truck was traveling nineteen miles per hour.

Motions to vacate and set aside the verdict, for a new trial, and for judgment notwithstanding the verdict, were overruled, and judgment was entered upon the verdict. Defendants have appealed, alleging numerous errors, among them being the overruling of the demurrer to plaintiff's evidence, the giving of erroneous instructions, the refusal to give certain requested instructions and special questions, alleged misconduct of counsel, erroneous rulings on evidence, the excessiveness of the verdict, and the court's rulings on all post-trial motions.

Plaintiff's theory throughout the trial was that the truck was out of control due to the slippery and icy condition of the highway rather than through negligence on the part of its occupants, and that the bus driver, when confronted with the situation and circumstances heretofore related, was negligent in failing to slacken his speed or bring the bus to a stop before the collision; in operating it at a speed

greater than was reasonable and prudent under the circumstances then existing; in failing to turn the bus aside so as to avoid striking the truck, and in failing to keep a proper lookout and observe the truck skidding on the highway toward the bus.

The theory of defendants was that the skidding of the truck was brought about by the negligence of its occupants in driving at a high rate of speed without due regard for the condition of the highway; that the truck's being over in the south traffic lane makes out a clear, prima-facie case of negligence so as to bar recovery, and that the bus driver, faced with such a situation, and being under a duty to protect his passengers, and also not knowing which way the truck was going to turn, cannot be held negligent for proceeding on up the hill in his own traffic lane.

We thus have a situation which perhaps, at some time or other, confronts nearly every driver of a motor vehicle on our highways— not knowing "what the other fellow is going to do." Here the evidence discloses that as the bus started up the long ice covered grade the truck came over the top of the hill skidding sideways all over the highway, obviously out of control and over in its wrong traffic lane. There was nothing to keep the bus driver from observing the truck, no other vehicles were involved, but he continued on up the hill without turning to one side or decreasing his speed, variously estimated at from thirty-five to fifty-five miles per hour, until the crash, which occurred in his lane.

In 60 C. J. S., Motor Vehicles, § 298, pp. 703 and 704, it is stated that while an unavoidable interference with a driver's control does not relieve him from liability where he was negligent, yet he is not liable unless his negligence was the cause of the loss of control, that this principle is often applied in the case of the skidding of a motor vehicle, and that the mere skidding of a vehicle does not of itself constitute negligence as a matter of law unless it resulted from the driver's negligence.

We also find the rule to be (§ 284, p. 661, same volume) that the driver of a motor vehicle has the duty of keeping a proper lookout at all times, the extent of observation being dependent upon the conditions and circumstances then existing, and that such duty includes the obligation to keep a vigilant lookout for such vehicles even as may be negligently on the highway, such as in the wrong lane of traffic.

We think clearly these matters were properly submitted to the

jury. It was for the jury to determine whether the truck was out of control, and if so, whether as a result of negligence on the part of its occupants or the condition of the highway, and whether, under the circumstances, the driver of the bus kept a proper lookout, and whether he exercised proper care in taking such steps as were possible, such as turning aside, slowing or stopping, in order to avoid the collision or at least to minimize its effects. In a case such as this it is not the function of this court to weigh evidence, and here the evidence was such that reasonable minds might differ on the question of negligence on the part of plaintiff's deceased as well as on the part of the bus driver. The demurrer to plaintiff's evidence was properly overruled.

Complaint is made of certain instructions given by the court, and particularly one which it is contended failed to state all of the elements of the last-clear-chance doctrine in that it did not go far enough so as to limit the bus driver's negligence, if any, to that committed after the danger was created by deceased's negligence, in the event it had ceased, but instead expanded the liability of the bus driver so as to include primary or direct negligence charged in the petition.

The instructions are lengthy and will not be set out. However, we have examined them in detail and think they fairly and correctly stated the law applicable to the issues presented by the evidence. We cannot say the court erred in the instructions given or in its refusal to give certain ones requested.

Error is also predicated on the court's refusal to submit special questions relative to the condition of the brakes, steering apparatus and tread of the tires on the bus. The answer to this complaint is that there was no evidence as to those matters and the court's refusal was therefore proper.

Other contentions, such as alleged misconduct of counsel, erroneous rulings on evidence, and the like, have been noted and examined, but, being without substantial merit, require no discussion.

This brings us to the basic question in this appeal, that is, are the verdict and judgment sustained by the evidence?.

It is true that the statute (G. S. 1949, 8-537) and rules of the road require that a vehicle be driven on the right side of the road (with certain exceptions not here present), but does it necessarily follow that every violation of the statute or rules makes the offender guilty of negligence so as to bar his recovery as a matter of law? In the

recent case of *Crawford v. Miller*, 163 Kan. 718, 186 P. 2d 116, it was held:

"In an action to recover damages to property sustained in a motor-vehicle collision mere violations of an ordinance or statute regulating traffic upon the streets and highways by the plaintiff are not in themselves sufficient to make him guilty of negligence which will bar his recovery as a matter of law. To prevent his recovery it must appear that his violations of such traffic regulations were the proximate and legal cause of his injuries." ( Syl. 1.)

In *Zinn v. Updegraff*, 113 Kan. 25, 213 Pac. 816, it was pointed out that the fact one of the meeting vehicles is on the wrong side of the road does not necessarily show negligence on the part of the driver thereof as a matter of law, nor does it render him liable to the other unless the latter took ordinary care to avoid any accident. It was further said that the object of the rules of the road is to avoid accidents, and that one is not justified in asserting his right to use his side of the road when by not doing so he can avoid a collision.

In 60 C. J. S., Motor Vehicles, § 283, pp. 660 and 661, it is said that the fact a motorist is on the proper side of the highway does not entitle him to make an unreasonable use thereof nor relieve him of the duty to exercise ordinary care to prevent an accident and avoid injury to others, including those who may be on the wrong side of the highway. ( See, also, *Schroeder v. Nelson*, 157 Kan. 320, 139 P. 2d 868.)

While as a general rule it may be said that a driver, absent knowledge to the contrary, may assume that an approaching vehicle will obey the rules of the road and thus get over and stay on its own side of the road (*Smith v. Salts*, 170 Kan. 313, 224 P. 2d 1025) yet he will not be permitted to act on the assumption where the factual basis for it has disappeared, as for example, where it appears that the driver of such vehicle on the wrong side of the road either will not or cannot turn back to his right side.

Our statute ( G. S. 1949, 8-532) provides that a person shall not drive a vehicle at a speed greater than is reasonable and prudent under the conditions and circumstances then existing; that a driver is not relieved of the duty to decrease speed when special hazards exist with respect to other traffic, or by reason of weather or highway conditions; and, further, that speed shall be decreased as may be necessary to avoid colliding with any vehicle or other conveyance on the highway in compliance with the duty of all persons to use due care.

We think it hardly can be said the bus driver was faced with an "emergency," in the strict sense of that word as used in negligence cases. All of the evidence points to the fact he saw, or could have seen, in the exercise of ordinary care, the skidding truck for a distance of at least six hundred or seven hundred feet, over in its wrong traffic lane and obviously out of control. The evidence further shows he did nothing to avoid the collision but instead proceeded right on up the hill without decreasing his speed. Further discussion of these matters would result only in repetition of what has already been said. All were fair questions for submission to the jury, under proper instructions, and that body has resolved all questions of negligence in favor of plaintiff. Its verdict is supported by the evidence.

And finally, it is argued the verdict was the result of passion and prejudice, and is excessive. Our examination of the record discloses nothing tending to incite the jury to return anything other than a fair verdict based on the evidence. True, it allowed the full amount prayed for and permitted under the wrongful death statute (G. S. 1949, 60-3203), but does that fact necessarily establish passion and prejudice and render the verdict excessive? In a case of personal injuries involving pain and suffering, extent of disability, loss of earning power, and the like, there is of course more room for speculation by a jury as to just what would fairly compensate an injured person. Here, however, the question seems simple. The deceased was a young man thirty-four years of age, in good health, earning over $4,600 per year, and was the sole support of his wife and two young children at the time of his death. The verdict was not excessive, even from a pecuniary standpoint alone.

A careful examination of this record discloses nothing approaching reversible error and the judgment of the lower court is therefore affirmed.