No. 43,933

Zane Gard, *Appellant,* v. Sherwood Construction Co., Inc.,
*Appellee.*

(400 P. 2d 995)

Opinion filed April 10, 1965.

*Thomas A. Wood,* of Wichita, argued the cause, and *Paul V. Smith, Douglas E. Shay, William C. Farmer, Leo R. Wetta, James R. Schaefer* and *Paul V. Dugan,* all of Wichita, were with him on the briefs for the appellant.

*Robert C. Foulston,* of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes, Robert L. Howard, Charles J. Woodin, Mikel L. Stout, Ronald K. Badger* and *Benjamin C. Langel,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action brought by Zane Gard, plaintiff (appellant), against Sherwood Construction Co., Inc., defendant (appellee), to recover damages for the wrongful death of plaintiff's wife arising from a car-truck collision occurring on U. S. Highway 54 west of Pratt about 5:45 p. m. on June 1, 1961.

The plaintiff commenced this action upon the theory the defendant was negligent in the following particulars: (1) failing to have his truck under control; (2) failing to stop, slow down or otherwise alter the speed, movement or direction of his truck when danger of a collision with the vehicle in which the plaintiff's wife was riding was imminent; (3) failing to keep a proper lookout; (4) driving his truck at a dangerous and excessive rate of speed without due regard to the use, width, traffic and occupancy of the highway at the time; and (5) that defendant's truck driver, in the exercise of reasonable care, should have seen plaintiff's wife in a position of imminent peril from which she could not extricate herself, and by the exercise of ordinary care, without injury to himself or others, could have stopped said truck or slackened its speed or turned the truck onto the wide shoulder of the highway and avoided striking the station wagon in which plaintiff's wife was riding.

At the close of plaintiff's evidence the defendant interposed a demurrer based on the theory that plaintiff's evidence failed to

show facts sufficient to constitute a cause of action in plaintiff's favor in that no actionable negligence on the part of the defendant was shown. The trial court sustained defendant's demurrer, took the case from the jury and entered judgment for the defendant, from which order plaintiff appeals.

Plaintiff's evidence in support of the allegations contained in his petition may be summarized as follows: The plaintiff, a physician and surgeon, accompanied by his wife and five children, started on a trip from Kansas City to Arizona on the mentioned day. The family occupied a Dodge station wagon that was pulling a rented trailer loaded with the family's belongings. Following the station wagon and trailer at a distance of four to six car lengths was a Pontiac automobile occupied by plaintiff's in-laws, the Wesemans, and Lester L. and Ione Mast. At Pratt, the plaintiff, who had been suffering a headache, moved to the Pontiac and Mr. Weseman took control of the station wagon, which proceeded in the lead. As the station wagon and trailer went over the crest of a small grade four miles west of Pratt, plaintiff noticed the trailer weave a few times and then straighten out. After this whipping action the station wagon and trailer traveled approximately 100 to 150 feet and again began to weave. At this time plaintiff noticed a large truck approaching from the west on the same highway. The weaving of the trailer became a violent whipping that ultimately threw the station wagon into the path of the above-mentioned truck, resulting in a collision of the vehicles. Plaintiff's wife, two of his children and Mr. Weseman were killed in the collision and plaintiff's other three children were severely injured.

Plaintiff testified he had checked the trailer several times en route, the last time being at Pratt when they had stopped for refreshments, and at no time found any defects or malfunctioning of the trailer. It was at plaintiff's request that Mr. Weseman proceeded to drive the station wagon. Mrs. Gard, plaintiff's wife, was sitting in the front seat on the right side and the children were in the back of the station wagon. Plaintiff further testified he asked Mr. Weseman to drive slowly, not to exceed thirty-five miles an hour, and on leaving Pratt, Weseman drove "O. K." and didn't seem to have any difficulty; that there was no weaving of the trailer during the first two or three miles but that it was as the station wagon and trailer went over the small crest that the trailer began to weave a few times; that after the first whipping action stopped the station wagon traveled perhaps 100 or 150 feet before

anything else happened. It was at this time plaintiff noticed a large truck approaching from the west going east as it was rounding a small bend in the highway approximately one-half or three-fourths of a mile down the road. Plaintiff watched the truck and estimated it was traveling between fifty and fifty-five miles an hour.

When the trailer started weaving it was between 600 and 800 feet from the site of the scene of the accident, and when the whipping became quite violent it was about 400 feet from the point of impact. Plaintiff estimated the trailer whipped back and forth across the roadway approximately ten or twelve times, each whip becoming more violent—probably starting from a foot as it started in the weaving process and gradually increasing to eight or ten feet before it went off to the right. As the trailer whipped it would cross the center line of the road and would whip into the east-bound lane [south side of road]. As the whipping became more violent it appeared each time that the trailer was more or less ready to jackknife, and on the last swerve it appeared that the station wagon went halfway onto the shoulder, the trailer swung out wider on the shoulder, and the station wagon then was crossing the highway. At times the trailer would swing three to five feet over the center line of the highway to the south side of the road.. During the time the trailer was whipping, the truck continued to come down the highway and did not appear to alter its course or speed.

Plaintiff further testified that as the trailer went into its more violent whipping, defendant's truck was 1,200 to 1,400 feet from the station wagon and trailer. The station wagon was gradually decreasing its speed as it went through this series of whips, and as it veered in the final whip it was probably doing ten miles an hour. When it started to cross the roadway it was just rolling. Its speed would have been comparable to a man walking; the further it went the slower it was moving.

It was plaintiff's testimony that the last he saw of defendant's truck it was approximately 200 to 250 feet from the station wagon, and it had not altered its course or decreased its speed; that the station wagon was astraddle the road at the time it was struck, its right front being struck by the left front of defendant's truck.

At the hospital defendant's truck driver told plaintiff he thought of swerving earlier; however, he didn't. He thought the trailer might right itself, and it didn't. He thought the danger was going to pass, but it didn't.

Plaintiff's testimony that the defendant's truck did not decrease its speed or alter its course was corroborated by Ione and Lester, L. Mast.

A highway patrol trooper testified to the following concerning his investigation of the accident: The highway was twenty-five feet three inches wide, the shoulder was ten to twelve feet wide; there was a ditch one and one-half to two feet deep along the shoulder with a gradual slope to the bottom of the ditch; the point of impact on the station wagon was ahead of the rear wheel; the truck went through the station wagon, taking out the motor and the steering column; the driver of the truck told him he was traveling in the neighborhood of forty-five to fifty miles an hour; the total distance from the brow of the hill down to the intersection to the west where the drivers of both cars could see one another was a distance of 4,575 feet; the point of impact from the south edge of the pavement was two feet two inches; the left front of the truck was two feet two inches from the right-hand side of the pavement; almost three-fourths of the truck was on the shoulder at the time of the collision; there were ninety-two feet of skid marks made by the truck up to the point of impact. It was the trooper's belief the station wagon at the point of impact was proceeding very slowly or was practically stopped when it was struck by the truck. He further testified the whipping of the station wagon and trailer left marks more than 300 feet east of the point of impact.

The trooper further testified he talked with the driver of the truck at the hospital and the driver told him that as he was proceeding east on the highway he noticed a vehicle pulling a trailer coming toward him, saw it start in a whipping or swaying motion, but didn't think there was much danger at that point, so he proceeded on the road until all at once he saw it was becoming a violent whipping motion. The driver said he was traveling approximately forty-five to fifty miles an hour at the time. In answer to the question propounded to him about whether or not the driver of the truck had done anything by the way of pulling over to the side or stopping or slowing down prior to the final lurch, the trooper testified the truck driver did not say but that in the course of the conversation they talked about the skid marks made by the truck, the last phases of the Dodge station wagon and the trailer when the truck driver did see the station wagon was in trouble and life could

be in danger, and it was at this time he turned to the right and applied his brakes for the first time.

We must consider whether or not the plaintiff made out a prima facie case of negligence against defendant. In so doing, we must recognize certain well-established rules. With respect to the ruling on the demurrer, defendant recognizes the well-established rule that in testing the sufficiency of evidence as against the demurrer, the court shall consider all of the plaintiff's evidence as true, shall consider that favorable to plaintiff, together with all reasonable inferences to be drawn therefrom, and disregard that unfavorable to plaintiff, and shall not weigh any part that is contradictory nor weigh any differences between the direct and cross-examination; and if the evidence and the inferences viewed in that manner are of such character that reasonable minds, in the exercise of fair and impartial judgment, might reach different conclusions thereto, the demurrer should be overruled and the issues submitted to the jury. (*Letcher v. Derricott,* 191 Kan. 596, 599, 383 P. 2d 533; *Carpenter v. Strimple,* 190 Kan. 33, 38, 372 P. 2d 571; *Krentz v. Haney,* 187 Kan. 428, 357 P. 2d 793; *Sneed v. KFH Building, Inc.,* 186 Kan. 255, 257, 349 P. 2d 950; *Reda v. Lowe,* 185 Kan. 306, 311, 342 P. 2d 172; *Creten v. Chicago, Rock Island & Pac. Rld. Co.,* 184 Kan. 387, 337 P. 2d 1003; *Haga v. Moss, Administrator,* 181 Kan. 171, 179, 311 P. 2d 281; *Koch v. Suttle,* 180 Kan. 603, 606, 306 P. 2d 123; *Fry v. Cadle,* 171 Kan. 14, 16, 229 P. 2d 724; *Olson v. Maxwell* [Tenth Circuit], 263 F. 2d 182.) It is also well established in this state that the question of negligence, including the determination of proximate cause, ordinarily rests in the province of the jury. Moreover, the question whether a negligent act is the proximate cause of an injury and whether an ordinarily reasonable and prudent man would have seen that injury might have occurred as the result of a negligent act is also a question for the jury. (*Krentz v. Haney,* supra, p. 430; *Olson v. Maxwell,* supra.) As was stated in *Applegate v. Home Oil Co.,* 182 Kan. 655, 662, 324 P. 2d 203:

"Generally speaking, where there is a question of the negligence of an actor, the causative element of his negligence, *i. e.,* the proximate or legal cause, is ordinarily a question for the jury. [Citing cases.] . . ."

(See, also, *State Farm Mutual Automobile Ins. Co. v. Cromwell,* 187 Kan. 573, 576, 358 P. 2d 761.) The proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the injury would not have occurred, an additional

condition sometimes stated being that it must appear the injury was anticipated or that it reasonably should have been foreseen by the person sought to be charged with liability. (*Rowell v. City of Wichita,* 162 Kan. 294, 176 P. 2d 590; *Mehl v. Carter,* 171 Kan. 597, 237 P. 2d 240; *Applegate v. Home Oil Co.,* supra.)

The rule that the causal connection between an actor's negligence and an injury is broken by the intervention of a new, independent and efficient intervening cause, so that the actor is without liability, is subject to the qualification that if the intervening cause was foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate cause, notwithstanding the intervening cause. (*Rowell v. City of Wichita,* supra; *Applegate v. Home Oil Co.,* supra; *State Farm Mutual Automobile Ins. Co. v. Cromwell,* supra.) As was stated in *Rowell v. City of Wichita,* supra:

"If there is some probability of harm sufficiently serious that ordinary men would take precautions to avoid it, then failure to take such care is negligence.

"It is not a necessary element of negligence that one charged with it should have been able to anticipate the precise injury sustained." (Syl. ¶¶ 4, 5.)

It seems unnecessary to prolong this opinion inasmuch as this case falls squarely within the facts and the rules of law enunciated in *DeGraw v. Kansas City & Leavenworth Transportation Co.,* 170 Kan. 713, 228 P. 2d 527. In *DeGraw* the plaintiff's husband was traveling west on State Highway No. 5 riding in a Ford panel truck being driven by his brother. Traveling east on the same highway was a passenger bus owned by the defendant. The highway was of concrete slab, eighteen feet wide, and coated with ice and snow. The point of collision was about one-third of the way down a grade or hill up which the bus was proceeding. The bus driver noticed plaintiff's vehicle as it came over the hill. It was out of control on its left side of the highway, moving slowly, but was zigzagging back and forth across the highway. The bus was traveling thirty-five to forty miles an hour. The distance to the hill which the bus was climbing was estimated to be about 700 feet. There was nothing to prevent the bus driver from seeing the truck, and the bus proceeded up the hill on its own right side of the highway. Reference to the opinion is made for further facts similar to the instant case.

The trial court in *DeGraw* overruled defendant's demurrer to plaintiff's evidence. The case was submitted to the jury which returned a verdict for the plaintiff and which this court approved, stating:

"We think clearly these matters were properly submitted to the jury. It was for the jury to determine whether the truck was out of control, and if so, whether as a result of negligence on the part of its occupants or the condition of the highway, and whether, under the circumstances, the driver of the bus kept a proper lookout, and whether he exercised proper care in taking such steps as were possible, such as turning aside, slowing or stopping, in order to avoid the collision or at least to minimize its effects. In a case such as this it is not the function of this court to weigh evidence, and here the evidence was such that reasonable minds might differ on the question of negligence on the part of plaintiff's deceased as well as on the part of the bus driver. The demurrer to plaintiff's evidence was properly overruled." (pp. 717-718.)

It was further stated:

"While as a general rule it may be said that a driver, absent knowledge to the contrary, may assume that an approaching vehicle will obey the rules of the road and thus get over and stay on its own side of the road, yet he will not be permitted to act on the assumption where the factual basis for it has disappeared, as for example, where it appears that the driver of such vehicle on the wrong side of the road either will not or cannot turn back to his own side.

"The purpose and object of rules of the road are to avoid accidents, but one is not justified in asserting his right to use his side of the road when, by not doing so, he can avoid a collision. The fact a motorist is on the proper side of the road does not entitle him to make an unreasonable use thereof nor relieve him of the duty to exercise due care to avoid injury to others, including those who may be on the wrong side of the road." (Syl. ¶¶ 4, 5.)

In the instant case we are of the opinion the trial court, in sustaining defendant's demurrer to plaintiff's evidence, failed to apply the aforementioned rules of law in considering the evidence. In fact, it is difficult to see how the court as a matter of law absolved defendant's driver from negligence in light of the driver's own statements made to the plaintiff and the highway patrolman. No useful purpose would be gained in restating the evidence. There appears to be little question but that there was evidence upon which the jury might find the defendant was guilty of negligence and that such negligence was a proximate cause of the collision and resultant death of plaintiff's wife. It cannot be said as a matter of law that the driver of defendant's truck was faced with an emergency, in the strict sense of that word as used in negligence cases. All the evidence points to the fact that he saw for a distance of at least one-half to three-fourths of a mile the zigzagging of plaintiff's trailer attached to the station wagon in which plaintiff's wife was riding. There was nothing to keep the truck driver from observing the station wagon and trailer, no other vehicles were involved, yet he did not decrease the speed of the truck or alter its course until

just immediately prior to the impact. The defendant's driver told the plaintiff he thought the trailer might right itself, but it didn't; he thought the danger was going to pass, but it didn't. Under the facts in the instant case we are of the opinion it was a question for the jury whether or not defendant's truck driver, seeing plaintiff's station wagon and trailer out of control, exercised that degree of care that an ordinarily prudent man would exercise under similar circumstances. Moreover, plaintiff's evidence presented a situation where reasonable minds might differ as to just who was negligent and whose negligence, if any, was the proximate cause of the injury complained of. Hence, clearly it was a question for the jury.

The legal questions here involved are so well settled in our law that they need not be labored. This was an action at common law in which the plaintiff sought damages alleged to have resulted from defendant's negligence. This is the kind of an action in which each party is entitled to a trial by jury as a matter of right. *Such an action should not be converted into a trial by the court.* Negligence is the lack of due care. The instances are relatively rare when the facts are such that the court should say that as a matter of law the negligence alleged has or has not been established. (*Lawrence v. Kansas Power & Light Co.,* 167 Kan. 45, 49, 204 P. 2d 752.)

The right of every individual citizen to a trial by jury is of ancient origin, and as now practiced is the result of a long process of development. Having early been regarded as a right, it was in England first guaranteed as such by the Magna Charta. It was introduced in this country by the English colonists who considered it a right under the English law, and is regarded as a basic and fundamental feature of American jurisprudence, and has since the organization of our government been incorporated in the form of expressed guaranties in the constitutions of both state and federal governments. It is a substantial and valuable right and should never be lightly denied. The law favors trial by jury, and the right should be carefully guarded against infringements (50 C. J. S., Juries, § 9, p. 722); and a trial court in the exercise of its prerogatives in determining questions of law, only, in these kinds of cases should not usurp the power and function of the jury in weighing evidence and passing upon questions of fact.

In view of what has been said, other matters discussed need not be treated. The judgment of the trial court is reversed and the case is remanded with directions to grant a new trial of the action.

PARKER, C. J., PRICE and SCHROEDER, JJ., dissent.